**In re McBRIDE.**

[Cite as *In re McBride,* 158 Ohio App.3d 572, 2004-Ohio-5269.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040456.

Decided Oct. 1, 2004.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Lashawn C. Hart, Assistant Prosecuting Attorney, for appellant, Hamilton County Jobs and Family Services.

Christopher Kapsal, for appellee, Peggy Fugate.

Amy L. Kurlansky, guardian ad litem for the minor child.

MARK P. PAINTER, Judge.

{¶ 1} Very few cases are of first impression; this seems to be one. May a natural parent who has lost permanent custody of a child to the state petition—not as a parent but as a legal stranger to the child—for custody?

{¶ 2} Hamilton County Jobs and Family Services ("HCJFS") appeals from the juvenile court's determination that appellee Peggy Fugate has standing to petition for the custody of her natural daughter, Selina McBride.

{¶ 3} The juvenile court, having no statute or precedent to guide it, relied on common sense. Sometimes courts must use common sense. That's how we got the common law. We affirm the juvenile court's decision.

## I. The Natural Mother Loses Permanent Custody

{¶ 4} The facts are simple. Fugate is the natural mother of Selina, who was born in 1990. In 1997, Fugate lost permanent custody of Selina to HCJFS due to her repeated incarcerations and her long-time addiction to cocaine. The award of permanent custody to HCJFS in 1997 was made with the expectation that Selina would be adopted by the foster family she resided with at the time. That did not happen. Since then, Selina has been through numerous institutions and foster homes and has stated that she does not want to be adopted.

{¶ 5} A permanent commitment to HCJFS, which includes the termination of parental rights and custody, is ordered with the hope and expectation that it will facilitate placement of the child in a permanent family environment. It is an attempt to avoid legal limbo and a revolving door of temporary homes. But that is exactly what Selina has experienced in her seven years in the custody of HCJFS.

## II. Mother Petitions for Custody

{¶ 6} In 2003, Fugate learned that Selina had not yet been placed in a permanent family environment. With Selina still in the custody of HCJFS and with no immediate likelihood of adoption, Fugate petitioned the juvenile court for custody of her daughter.

{¶ 7} HCJFS argues that Fugate lacked standing to seek custody of Selina because all of Fugate's rights and obligations with respect to Selina were terminated when HCJFS was awarded permanent custody. That is true— Fugate now has no legal status in relation to Selina. But HCJFS further contends that Fugate was attempting to relitigate the determination of permanent custody. HCJFS also expresses concern that allowing Fugate's petition to proceed would make permanent-custody determinations a nullity. It argues that allowing this practice would open the floodgates for people to later challenge grants of permanent custody to HCJFS, which are determinations meant to facilitate permanent placements for children.

{¶ 8} Strangely enough, the juvenile court, which would be innundated by the deluge were the floodgates breached, did not see that problem. Neither do we.

{¶ 9} Fugate counters that Juv.R. 10 allows "any person" to file a petition for custody of a child. Fugate acknowledges that her parental rights were terminated in 1997 but claims that she has a right, as would any other nonparent of Selina, to seek custody and to have her day in court to demonstrate that it would be in Selina's best interest to be placed with her.

### III. Though There Is No Precedent, the Trial Court Was Correct

{¶ 10} Though no statute or case law has addressed exactly this issue, we conclude that there is no legal bar to Fugate's pursuing her petition for custody of Selina. Juv.R. 10 states that "any person" may file a petition for custody of a child, and the fact that Fugate has lost her legal standing as Selina's parent does not mean that Fugate should be in a worse position than a stranger to the child.

{¶ 11} At a hearing in juvenile court, the attorney for HCJFS said that Fugate "has no relationship with this child." The court responded, "Technically speaking no nonparent does. I could petition for custody of the child. You could petition the court for custody of the child. As a matter of fact, we've had a number of cases where agency workers have petitioned the court for custody of a child."

{¶ 12} At another point, the court stated, "The reality is if a nonparent approached the Department interested in this child they would move Heaven and Earth to pursue placement with this child. The Department is foreclosing the former mother in this case because of her status as the former mother."

{¶ 13} We agree with the juvenile court's analysis. Fugate is situated no differently from any other nonparent and cannot be foreclosed from litigating her petition for custody. We refuse to create a separate class of people who cannot file for custody. That class would consist of only one, or perhaps two, people in the entire world—the natural parent or parents who have previously lost custody.

{¶ 14} We agree that the avalanche of evidence that convinces a court to deprive natural parents of custody of their children militates against their being fit parents ever. But our court/justice/legal/moral system supposes that people can change. Odds may not smile, but we have hope.

{¶ 15} We also glean that HCJFS would rather have Fugate, or anyone else, go through its agency to qualify to approach the court. While there is nothing wrong with this gatekeeper role, the agency must realize that it is not the sole keeper of the gate. Of turnstiles, sometimes the law needs more than one.

{¶ 16} The guardian ad litem for Selina argues that because of Fugate's history with HCJFS, along with the fact that she lost permanent custody of Selina, Fugate would not be considered suitable as either a placement or an adoptive parent. In short, the guardian believes that, due to her history, Fugate would not pass HCJFS's standards and should not be allowed to petition for custody.

{¶ 17} But this argument addresses issues not yet relevant. Before us now is whether the fact that Fugate was divested of her parental rights in 1997 now bars her from petitioning for custody of Selina.

{¶ 18} The issue is not whether Fugate has a realistic chance of winning her petition and regaining custody. Fugate quite likely has an uphill battle to establish her claim. But the only issue before us is whether she should be allowed her day in court to argue for custody. We hold that she, like everyone else in the universe, has that right. Just because she might lose the case does not mean she may not enter the courthouse.

{¶ 19} Contrary to HCJFS's assertion, Fugate is not seeking to relitigate the award of permanent custody to HCJFS. Fugate seeks to petition for a change of custody. In hearing her petition, the court will focus primarily on the events of the past seven years, and, most important, on what will now be in Selina's best interests.

{¶ 20} The goal of permanent commitment to HCJFS is eventual placement of the child in a permanent family environment. Had Selina been adopted into a permanent family environment, this case would be different. When a child is adopted, the adoption establishes new parents. Everyone else becomes a stranger to that relationship and cannot seek custody as Fugate does here.

### IV. The Natural Mother Is a Person

{¶ 21} Because HCJFS has had custody of Selina for seven years and has, through no fault of its own, not been able to obtain a permanent placement for her, "any person" is entitled to file a petition and seek custody of Selina. And Fugate falls into the "any person" category. Having had her rights as the natural parent terminated, she stands legally no better than a stranger to the child. But she stands no worse.

{¶ 22} We hold that Fugate is permitted to petition the juvenile court for a change of custody. Fugate should be allowed to present evidence that placement of Selina with her would be in Selina's best interest. The juvenile court is allowed to exercise common sense to decide that issue.

{¶ 23} Accordingly, we overrule HCJFS's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

DOAN, P.J., and SUNDERMANN, J., concur.